## Hobbs vs. Blandford.

Error to the Nelson Circuit; PAUL I. BOOKER, Judge.

*Husband and wife. Fraud on marital rights. Notice. Evidence.*

Chief Justice BIBB delivered the Opinion of the Court.

June 30.

In May, 1826, Francis D. Blandford instituted an action of detinue against Ezekiel Hobbs, for a slave called James.

*Detinue for a slave by Fr. D. Blandford against Hobbs.*

To sustain his claim, the plaintiff, Blandford, gave in evidence a writing, executed by his mother, Mary Blandford, then *sole*, afterwards the wife of said Hobbs, for the slave; the writing bears date on the 20th Feb. 1805; it purports to have been made in consideration of five pounds, to transfer the said slave, James, to Walter Blandford, on the following conditions: the said Mary to have the entire use and benefit of said slave during her natural life, after her death, the slave to go to her son, Fr. D. Blandford, by a regular transfer from said Walter, if Francis, died before said Mary, the slave to be the property of said Walter, or his heirs; if Francis should die without issue, after being possessed of the negro, in that case the slave to revert to said Walter.

*Bill of sale by Hobbs' wife before marriage, claimed under by plaintiff.*

The plaintiff introduced a subscribing witness to the said bill of sale, who stated that it was executed on the day it bears date, that said Mary and Hobbs were then engaged to be married, and were married in seven days thereafter; that Hobbs was not present at the execution, and did not know of it, as far as she knew.

*Evidence of the execution of the bill of sale.*

He then introduced Walter Blandford, the grantee, and read the record of a suit in chancery, between said Francis D. Blandford complainant, and said Walter, and said Hobbs, defendants, concerning said slave, in which the complainant claimed the slave by the death of his mother, and by said writing; said Hobbs resisted the claim as fraudulent; and said Walter answered on the 20th August, 1825, by releasing all his right and interest to said Francis. This suit in chancery was instituted in July, 1825. The object of the bill was to take the negro out of Hobbs' possession, unless the defendant, Hobbs,

*Record of the case of F. D. Blandford against W. Blandford and Hobbs.*

should give security not to remove the slave out of the State, but have him forthcoming to answer the decree to be made; also that he give security for the hire from the death of said Mary, the wife of Hobbs. It charged, that the value of the negro was $500, and his annual hire $100, and prayed for relief generally. What was finally done in this suit does not appear; the injunction and restraining order against Hobbs was discharged, in August, 1826.

Evidence
that the bill
of sale was
in fraud of
Hobbs' marital rights.

Said Walter Blandford stated, that his sister Mary and said Hobbs were, at the date of said writing, engaged, as he then knew, to be married, and were married in a few days thereafter; that Hobbs was not present at the execution of the paper, and knew nothing of it, so far as he knew. In 1808 himself and Hobbs got to law about the negro; Hobbs claimed him by his marriage; he was disputing with Hobbs, and asked him if he did not know of the existence of the paper before his marriage, Hobbs stated, "that the old lady, the mother of his wife, told him there was such a paper, but he never believed it, and then claimed the negro as his own; he stated that the object of the bill of sale was to prevent Hobbs from acquiring title to the negro by the marriage, and to secure him to her son, who then lived in Virginia; that at the time of its execution said Mary and the negro boy lived with him, and so continued, as usual, until Hobbs married her, and took the negro away; that his sister had been possessed of said negro for years before her marriage; that said Mary, the wife of Hobbs, died on the 27th June, 1825; that Hobbs was, at her death, and ever since, possessed of the negro; he was worth three or four hundred dollars, and his hire about sixty dollars annually. The suit in chancery between said Francis and said defendants, and said Walter Blandford, was introduced by plaintiff, to shew said Walter's release of title to the plaintiff, Francis.

Instructions
moved by
Hobbs, refused by the
court.

Upon this evidence, the defendant moved the court to instruct the jury, that if they believed that Hobbs, on the second of July, 1805, and ever since, had possession of this negro, claiming him as his own property, in right of his marriage, and against

the provisions of the bill of sale, that then the re- <span style="float:right">Hobbs<br>vs.<br>Blandford.</span>
linquishment of said Walter given in evidence, and
contained in his said answer, did not vest such a
right in the plaintiff as to maintain this action; but
that the right of action, if any, (if the jury be-
lieved the evidence) existed, and was vested in, Wal-
ter Blandford, and could not be transferred whilst
the negro was in the adverse possession of Hobbs.
The court refused so to instruct the jury.

The defendant then offered in evidence the record
of the suit in chancery, instituted in June, 1808, by
Walter Blandford against said Hobbs, to restrain
Hobbs, from selling or conveying away said slave,
setting up this bill of sale; charging the slave to be
of the value of $400; stating that Hobbs claimed
the slave as his own property, and praying that the
slave be taken out of his possession, unless he will
give security not to sell or remove the slave out of
the State, and praying for a writ of *ne exeat;* to
which Hobbs answered, insisting that the said wri-
ting was fraudulent, and made his answer a cross
bill against said Walter and said Francis, to which
cross bill said Walter answered in April 1809.  This
record, and Walter's bill, as sworn to, and his an-
swer to the cross bill, was offered as the record
states, for every legitimate purpose.  The court re-
jected this evidence, offered by the defendant.

*Record of
the case of
W. Bland-
ford against
Hobbs offer-
ed, but re-
jected by the
court.*

The defendant then introduced the writer of said
bill of sale, who stated, that Walter Blandford ap-
plied to him, stating his sister Mary Blandford was
about to marry Ezekiel Hobbs, that he said Walter
wished such an instrument drawn as would prevent
Hobbs from holding the negro, as he believed the
said negro boy was one, if not the principal, object
of Hobbs in marrying his sister, and the witness
drew the bill of sale given in evidence; the witness
asked said Walter if Hobbs knew of the intention
to have such a bill of sale made; said Walter said
no; witness told him Hobbs ought to be informed
of it, said Walter said Hobbs should know of it,
as he did not wish him to marry his sister; that
Hobbs, from the time of his marriage, continually had
possession of the slave, exercising acts of ownership.

*Farther evi-
dence of the
intent of the
bill of sale.*

HOBBS
vs.
BLANDFORD.

The defendant moved for instructions to the jury, and so did the plaintiff, which need not.be particularly stated, as the opinion of the court upon the propositions asserted in the instruction, as actually given by the court in responding to the instructions of plaintiff and defendant, will be sufficient to decide the merits of the controversy.

Instructions given by the court.

The court instructed the jury, that if they believed that the bill of sale was executed on the day it bears date, that the release in Walter Blandford's answer given in evidence was also executed by him, that *Hobbs* was possessed of the slave at the institution of the suit, that his wife died before the suit, and that Hobbs had notice of the bill of sale before his marriage, then the law is for the plaintiff; but if they believed that after the said Hobbs and said Mary were engaged to be married, the writing was secretly executed, and no notice thereof given to Hobbs before their marriage, then the said writing as to him was void, and the law is for the defendant. To this instruction the defendant excepted.

Verdict and judgment for Blandford.

The jury found for plaintiff, the court rendered judgment accordingly, and the defendant prosecutes this writ of error.

The instruction given involves two propositions only, which require particular consideration, the re-release given in evidence, and the effect ascribed to notice of the bill of sale, if found by the jury.

Title acquired by the plaintiff pending the action, avails nothing.

First, as to the release. This action of detinue was commenced in May, 1826; the release of Walter Blandford is made by way of answer to Francis' bill; it rests solely upon the answer itself; this answer was put in not until the 20th August, 1826, and was not even certified before. If the writing of 1805, under which the plaintiff in detinue claims from Mary, his mother, can have any legal effect, it must be to transfer the legal right to Walter Blandford, in trust for her during life, and after her death in trust to convey to her son, as the instrument says, "by a regular transfer from the said Walter or his heirs." At the institution of this suit, the said Francis had not the legal right of property whereon to ground his

action at law. The instruction asked by the defendant, Hobbs, upon the closing of the plaintiff's own evidence, and before he opened his defence, ought, on this point, to have been given. A cause of action, if acquired after suit, cannot sustain the suit instituted prematurely.

Secondly, as to the notice. A contract to marry, is obligatory upon the parties mutually. If Hobbs had refused to perform it, the law would have sustained an action by Mary Blandford against him, for the breach. Marriage is, in law, a valuable consideration. Hobbs was, in law, protected from fraud upon the rights and consequences of the contract of marriage, which he had entered into with said Mary, his after wife. The plaintiffs own evidence conduced to prove a fraud upon the intended marriage; Walter Blandford acknowledged the writing to have been made to prevent Hobbs from acquiring the right to the slave by the marriage, which he knew to have been then contracted between his sister and Hobbs; and the defendant's evidence conduced to prove that Walter's design in procuring the bill of sale was, to break off the intended marriage. The evidence conduced to prove the bill of sale fraudulent. The evidence of Walter Blandford himself, was, and so was all the evidence, that at the time of the execution of the bill of sale, Hobbs was wholly ignorant of it, and had not been consulted; Mary lived with Walter; and the possession contined, as before, in Mary, until her marriage, and until Hobbs acquired the possession of the slave.

With such evidence, conducing to prove the transaction fraudulently aimed at Hobbs, the after notice of the execution of the paper, as given in evidence by the plaintiff, could not purge the fraud. Notice of an illegal and fraudulent act, after it is done, cannot render it pure and legal. If Hobbs had ratified the act, after he had notice of it, then such assent and ratification, (if the evidence had conduced to prove any such,) would have been a proper point of instruction to the jury, to be by them compared with the evidence. But the evidence did not conduce to prove such assent and ratification by Hobbs.

HOBBS
vs.
BLANDFORD.

Conveyance of the estate of the feme, on the eve of her marriage, without the consent of her contemplated husband, is a fraud on his rights, and void as to him.

Notice of the husband between the engagement and marriage, of the conveyance of the wife's estate, in fraud of his marital rights, does not help the conveyance, nor affect his right.

Walter Blandford stated, that in 1808, when himself and Hobbs were at law about the slave, he asserting the validity of the bill of sale, and Hobbs charging it to be fraudulent, Hobbs acknowledged, that his wife's mother had told him there was such a paper, but he did not believe it. This confession must be taken all together; it does not conduce to prove, per se, an assent to, or ratification of, what had been done; on the contrary, Hobbs was then contesting its validity. This declaration of Hobbs amounts to no more than that he had heard of such paper before his marriage, not that he had been consulted about its execution, or that he had assented to it, or agreed to be bound by it; his words signify directly the reverse of assent and ratification. So that the question comes to this, did the notice of the execution of this paper, so had and contrived, connected with his after marriage, amount in law to a ratification of the act by Hobbs? Clearly not. Hobbs had, before the act done, contracted himself in marriage with Mary Blandford. If, by reason of the notice given him of that paper, by the mother of his intended wife, he had broken the marriage contract, then the main object and design of the fraud on the part of Walter Blandford, which the evidence conduced to shew, would have been accomplished. Hobb's marriage, was not superinduced by the bill of sale, but by virtue of his pre-contract of marriage. In executing the pre-contract of marriage, between himself and Mary Blandford, he did not assent to or ratify the act of Walter Blandford, in taking the bill of sale in fraud of his pre-contract.

Between the bill of sale and the after marriage, there is no such necessary connexion, as that Hobbs must be presumed in law to have assented to it, barely because he had notice of it. Hobbs' rights had their inception by virtue of the contract of marriage; by the consummation of the marriage contract, his incipient rights were so far consummated, as that he might use all legal means to repel any aggressions upon those incipient rights. Had he refused to marry, after being informed of the bill of sale, because of it, then indeed he would have made it valid and binding. Had he broken off the marriage

agreement, and attempted to defend his conduct because of that bill of sale, then he would have affirmed that he meant to be bound by it, and had squared his conduct in obedience to it. By his marriage, he placed himself in an attitude to deny the validity of the bill of sale, and to resist its effects upon his rights. The instruction of the court, as given, by turning the cause upon the fact of notice, or no notice, has deduced a confirmation and ratification of the bill of sale, from the notice and after marriage of Hobbs, as an inference of law. The law does not warrant such inference.

The decision on these points renders any decision upon the other points unnecessary.

It is the opinion of this court, that the circuit court erred in the instruction given to the jury, as stated in the bill of exceptions. Judgment reversed with costs, and case remanded for a *venire facias de novo.*

*Chas. Wickliffe* for plaintiff; *Chapeze* for defendant.